PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| RONALD HALE, *et al.* | ) | |
|---|---|---|
| | ) | CASE NO. 4:18CV2217 |
| Claimants, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CHESAPEAKE EXPLORATION, L.L.C., *et al.* | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Respondents. | ) | **ORDER** [Resolving ECF No. 9] |

Pending before the Court is the Chesapeake parties' (Respondents) motion for summary judgment and petition to confirm the arbitration award. ECF No. 9. According to a November 27, 2018, Order, the Hales (Claimants) were to file a brief in opposition and cross-motion for summary judgment, if any, no later than December 17, 2018. ECF No. 10. They filed neither. To the extent possible, the Court construes the Hales' initial application to vacate the arbitration award and accompanying briefing (ECF No. 1) as their opposition to the Chesapeake parties' motion for summary judgment.

The Court has been advised, having reviewed the parties' briefs, the record, and the applicable law. For the reasons given below, the Chesapeake parties' motion for summary judgment (ECF No. 9) is granted, and the arbitration award is confirmed.

## I. Factual and Procedural Background

Ronald and Joetta Hale (the "Hales") own interests in two oil and gas leases, one in Carroll County, Ohio, and another in Columbiana County, Ohio. ECF Nos. 9-3, 9-4. In both

leases, the Hales are the lessors, and Chesapeake Exploration, LLC ("Chesapeake Exploration"), is the lessee. ECF Nos. 9-3, 9-4. The leases authorize Chesapeake Exploration to enter the land and produce and sell any oil and natural gas found there. ECF Nos. 9-3, 9-4. In exchange, the Hales are to receive royalties calculated as a percentage of the proceeds attributable to the production from each well. ECF Nos. 9-3 at PageID#: 81, 9-4 at PageID#: 100. Related company CHK Utica, LLC ("CHK Utica"), also has a working interest in the leases, but it has authorized Chesapeake Exploration and Chesapeake Operating, LLC ("Chesapeake Operating"), to sell the share of oil and gas produced on its behalf. ECF No. 9-2 at PageID#: 71, ¶ 19.

Once produced, Chesapeake Exploration and Chesapeake Operating sell the oil and gas from the Hales' property to Chesapeake Energy Marketing, LLC ("Chesapeake Marketing"). *Id.* at ¶ 16; ECF No. 1 at PageID#: 2, ¶ 8. Chesapeake Marketing contracts with third parties to provide post-production services on that oil and gas, then sells the oil and gas to downstream third-party purchasers. ECF No. 9-2 at PageID#: 71, ¶ 16; ECF No. 1 PageID#: 2, ¶ 8. From the corresponding revenue, Chesapeake Exploration subtracts the costs related to post-production services and pays royalties to the Hales based on the resulting figure. ECF No. 9-2 at PageID#: 71, ¶¶ 17-18; *see* ECF No. 1 at PageID#: 71, ¶ 9.

Chesapeake Energy Corporation ("Chesapeake Energy") is the parent company of CHK Utica, Chesapeake Exploration, Chesapeake Operating, and Chesapeake Marketing. Collectively, the parties are referred to in this Order as the "Chesapeake parties."

The Hales pursued claims in arbitration against the Chesapeake parties for breach of contract. ECF No. 9-5 at PageID#: 160-63. As their core argument, the Hales posited that they

(4:18CV2217)

should have received royalties on the revenue figure of the sale from Chesapeake Marketing to downstream purchasers, rather than on the revenue figure of the sale from Chesapeake Exploration/Operating to Chesapeake Marketing. *Id.* The argument was premised on the theory that Chesapeake Marketing underpaid Chesapeake Exploration/Operating for the pre-production material because they were related. *See id.* The Hales further argued that, because their royalties were underpaid, Chesapeake Energy and Chesapeake Operating had committed civil conversion and had violated the Ohio Corrupt Practices Act. *Id.* at PageID#: 163-68.

The arbitration panel, selected and convened in accordance with the rules of the American Arbitration Association, unanimously decided against the Hales on all their claims after extensive briefing, including statements of undisputed facts and expert reports. ECF No. 9-7. The panel provided a thorough delineation of its findings and the reasons for its conclusions. *Id.* Most pertinently, it explained that the Hales had "provided no evidence that [Chesapeake Marketing], an affiliate of [Chesapeake Exploration], paid a price to [Chesapeake Exploration] that was 'less than that which would be received from a sale to an unaffiliated third party in an arms length transaction considering the volume available quality, location, and length of term of the proposed sale . . . .'" *Id.* at PageID#: 187 (quoting language from the leases, *see* ECF No. 9-3 at PageID#: 81, 9-4 at PageID#: 100).

Dissatisfied, the Hales filed this lawsuit asking the Court to vacate the arbitration award. ECF No. 1. They posit that the arbitration panel did not merely commit legal error by ruling against them, but rather that the arbitrators "exceeded their powers" and "effectively dispensed

3

(4:18CV2217)

their own brand of industrial justice." ECF No. 1 at PageID#: 4-5 (quoting 9 U.S.C. § 10(a) and *Stolt-Nielsen SA v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 669 (2010)).

## II. Standard of Review

The Federal Arbitration Act expresses a "federal policy favoring arbitration." *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989)). "When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 305 (6th Cir. 2008) (citation omitted). "Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006) (citation and emphasis omitted). "[A]n arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 589 U.S. 564, 569 (2013) (citation omitted).

Pursuant to the Federal Arbitration Act and pertinent case law, a court may vacate an arbitration award only in the following situations:

> (1) where the award was procured by fraud, (2) where the arbitrators were evidently partial or corrupt, (3) where the arbitrators misbehaved so that a party's rights were prejudiced, or (4) where the arbitrators exceeded their powers or executed them so that a final, definite award was not made. In addition, a reviewing court may vacate an award where the arbitrators have manifestly disregarded the law.

*Elec. Data Sys. Corp*, 473 F.3d 684, 688 (6th Cir. 2007) (citation omitted); *see* 9 U.S.C. § 10(a).

4

(4:18CV2217)

A court "must" confirm an arbitration award "unless" the court vacates, modifies, or corrects the award "as prescribed" in the FAA. *Hall St. Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). This limited review is meant to avoid "full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* at 588 (quoting *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 998 (9th Cir. 2003)).

### III. Law and Analysis

In an effort to clear those hurdles, the Hales insist that the arbitration panel "exceeded its powers" because it contradicted directly controlling law drawn from an identical case. More specifically, the Hales assert that they drew the panel's attention to a class-certification decision issued by the undersigned on March 23, 2018, in another case involving Defendant Chesapeake Exploration. *See Henceroth v. Chesapeake Exploration, LLC*, Case No. 4:15-cv-2591, at ECF No. 116. The panel, say the Hales, ignored the Order in *Henceroth* and "dispensed [its] own brand of industrial justice." ECF No. 1 at PageID#: 5 (citing *Stolt-Nielsen*, 559 U.S. at 669).

The Hales derive two supposed rulings from the *Henceroth* Order: "(1) that Chesapeake Exploration must pay royalties [on identical contracts] on 'the third-party price without cost deductions' and (2) the credits to Chesapeake Exploration on Chesapeake Energy Corporation's general ledger state 'unrealized' revenue." *Id.* They continue, "The panel ignored these important rulings." *Id.*

The Court in *Henceroth* did not rule that leases such as the Hales' "require that the royalties be paid on the third-party price without cost deductions." *See id.* The Hales purport to

5

(4:18CV2217)

derive such a "ruling" from the Court's Order in *Henceroth* by stripping the quoted words from context. In the *Henceroth* class-certification order (Case No. 4:15-cv-2591, at ECF No. 116), the Court addressed whether the relevant price from which royalties should be assessed was a question that was common to the entire (then-putative) class and, if so, the extent to which that question predominated over individualized issues in the litigation. The Court did not opine on whether the "third-party price without cost deductions" was the appropriate price from which to assess royalties under the class members' contracts. The *Henceroth* class-certification Order provided no guidance to the arbitration panel on that question.

The Hales also intimate that the arbitration panel ignored the Court's "ruling" in *Henceroth* to the effect that "the credits to Chesapeake Exploration on Chesapeake Energy Corporation's general ledger state 'unrealized' revenue." *See* ECF No. 1 at PageID#: 5. The Court in *Henceroth* made no such ruling, and the arbitration panel did not ignore anything it was obligated, or even well-advised, to consider.

Finally, the Hales posit that the arbitration panel misapplied the holdings of two out-of-circuit cases: *Pollock v. Energy Corporation of America*, 665 F. App'x 212 (3d Cir. 2016), and *Canfield v. Statoil USA Onshore Properties, Inc.*, 2017 WL 1078184 (M.D. Pa. Mar. 22, 2017). By the Hales' account, those cases provide guidance on the meanings of the terms "marketing," "production," and "proceeds" in the oil-and-gas context. ECF No. 1 at PageID#: 2-3. Even if those cases were controlling on the panel, and even if the panel reached the wrong result, "a legal error committed by an arbitrator is insufficient for vacatur under the FAA." *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 605 (6th Cir. 2016).

(4:18CV2217)

The arbitration panel did not, as the Hales suggest, "exceed its powers." There is, therefore, no ground on which to vacate the panel's award.

### IV.  Conclusion

For the reasons provided, the Court grants the Chesapeake parties' motion for summary judgment ([ECF No. 9](ECF No. 9)) and confirms the arbitration award.  The case is closed.

IT IS SO ORDERED.

| | |
|---|---|
|  December 20, 2018  |  */s/ Benita Y. Pearson*  |
| Date | Benita Y. Pearson |
| | United States District Judge |