PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| RONALD HALE, *et al.* ) | |
| ) | CASE NO. 4:18CV2217 |
| Claimants, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| CHESAPEAKE EXPLORATION, L.L.C., *et* ) | |
| *al.* ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Respondents. ) | **ORDER** [Resolving ECF Nos. 9, 19] |

Pending before the Court are the parties' respective motions for summary judgment and petitions with respect to the arbitration award.[1] ECF Nos. 9, 19. The Chesapeake Parties ask the Court to confirm the arbitration award in its entirety, and the Hales ask the Court to vacate Counts I and II of the award. ECF No. 20 at PageID#: 757. The parties agree that the award should be confirmed as to Counts III, IV, and V. *Id.*

On December 20, 2018, in the absence of any briefing by the Hales, the Court issued a Memorandum of Opinion and Order (ECF No. 11) and Judgment (ECF No. 12) in favor of the Chesapeake Parties. On the Hales' motion, those Orders were vacated and the matter was reopened. ECF Nos. 13, 14. The matter has now been fully briefed. For the reasons given below, the Chesapeake Parties' motion for summary judgment (ECF No. 9) is granted, the Hales'

---

[1] *Ronald and Joetta Hale v. Chesapeake Exploration, L.L.C., et al.*, AAA Case No. 01-17-0000-6233.

(4:18CV2217)

motion for summary judgment (ECF No. 19) is denied, and the arbitration award is confirmed in its entirety.

## I. Factual and Procedural Background

Ronald and Joetta Hale (the "Hales") own interests in two oil and gas leases in Ohio, one in Carroll County and another in Columbiana County. ECF Nos. 9-3, 9-4. In both Leases, the Hales are the lessors, and Chesapeake Exploration, LLC ("Chesapeake Exploration"), is the lessee. ECF Nos. 9-3, 9-4. The Leases authorize Chesapeake Exploration to enter the land and produce and sell any oil and natural gas found there. ECF Nos. 9-3, 9-4. In exchange, the Hales are to receive royalties calculated as a percentage of the proceeds attributable to the production from each well. ECF No. 9-3 at PageID#: 81, ECF No. 9-4 at PageID#: 100. Related company CHK Utica, LLC ("CHK Utica"), also has a working interest in the Leases, but it has authorized Chesapeake Exploration to sell the share of oil and gas produced on its behalf. ECF No. 9-2 at PageID#: 71, ¶ 19.

Once produced, Chesapeake Exploration sells the oil and gas from the Hales' property to Chesapeake Energy Marketing, LLC ("Chesapeake Marketing"), and it pays royalties to the Hales on the proceeds from that sale. *Id.* at ¶¶ 16-18; ECF No. 1 at PageID#: 2 (¶ 8), 71 (¶ 9). Chesapeake Marketing contracts with third parties to provide post-production services on the purchased oil and gas, then sells the oil and gas to downstream third-party purchasers, typically at a higher price than it paid to buy it from Chesapeake Exploration. ECF No. 9-2 at PageID#: 71, ¶ 16; ECF No. 1 PageID#: 2, ¶ 8.

(4:18CV2217)

Chesapeake Energy Corporation ("Chesapeake Energy") is the parent company of CHK Utica, Chesapeake Exploration, Chesapeake Operating, and Chesapeake Marketing. Collectively, the parties are referred to in this Order as the "Chesapeake Parties."

The Hales pursued claims in arbitration against the Chesapeake Parties for breach of contract. ECF No. 9-5 at PageID#: 160-63. As their core argument, the Hales posited that they should have received royalties on the revenue figure of the sale from Chesapeake Marketing to downstream purchasers, rather than on the revenue figure of the sale from Chesapeake Exploration to Chesapeake Marketing. *Id.* The argument relied on the theory that Chesapeake Marketing never really transacts with Chesapeake Exploration to obtain the pre-production material because Chesapeake Marketing and Chesapeake Exploration are, in effect, the same entity. *See id.* Chesapeake Exploration, the Hales explained, does not maintain a bank account of its own; rather, it is "credited" for its sales to Chesapeake Marketing with an "intercompany receivable" on a general accounting ledger. ECF No. 20 at PageID#: 764; ECF No. 22 at PageID#: 812. Because any transaction between Chesapeake Exploration and Chesapeake Marketing is fictitious, the Hales posited, royalties cannot fairly be derived from the "price" of that exchange.

One piece of that argument centered on the "marketing" clause in the Hales' Leases: "Lessee shall place oil and gas from the Leased Premises in marketable condition and shall market same as agent for Lessor." ECF No. 9-3 at PageID#: 82 (Art. 3, § 2(e)); ECF No. 9-4 at PageID#: 101 (Art. 3, § 2(e)). The Hales argued that Chesapeake Exploration does not perform any marketing; Chesapeake Marketing does. The Chesapeake Parties' obligation to "market" the

3

(4:18CV2217)

oil and gas extracted from the Hales' property, they posited, is not satisfied until Chesapeake Marketing sells the product to third-party purchasers. For that reason, they said, royalties should be paid on the downstream purchaser sale, not the affiliate-to-affiliate sale between Chesapeake Exploration and Chesapeake Marketing. ECF No. 19-5 at PageID#: 375.

The Arbitration Panel, selected and convened in accordance with the rules of the American Arbitration Association, unanimously decided against the Hales and in favor of the Chesapeake Parties on all claims after extensive briefing, including statements of undisputed facts and expert reports. ECF No. 9-7. The Panel provided a thorough delineation of its findings and the reasons for its conclusions. *Id.* It explained that the Hales had "provided no evidence that [Chesapeake Marketing], an affiliate of [Chesapeake Exploration], paid a price to [Chesapeake Exploration] that was 'less than that which would be received from a sale to an unaffiliated third party in an arms length transaction considering the volume available quality, location, and length of term of the proposed sale . . . .'" *Id.* at PageID#: 187 (quoting language from the Leases, *see* ECF No. 9-3 at PageID#: 81, ECF No. 9-4 at PageID#: 100). The Arbitration Panel found that "[Chesapeake Exploration] transfers title and receives total consideration from [Chesapeake Marketing] for the oil and gas produced from the . . . Leases; [Chesapeake Exploration] markets the oil and gas produced from the . . . Leases," and "[Chesapeake Exploration] and its affiliates make legally sufficient accounting entries on their books and records to evidence transfer of title and consideration paid for the oil and gas produced from the Hale Leases." ECF No. 9-7 at PageID#: 187.

(4:18CV2217)

Dissatisfied, the Hales filed this lawsuit asking the Court to vacate the arbitration award.[2] ECF No. 1. They posit that the Arbitration Panel did not merely commit legal error by ruling against them, but rather that the arbitrators "exceeded their powers" and "effectively dispensed their own brand of industrial justice," and that they "manifestly disregarded the law." ECF No. 1 at PageID#: 4-5 (quoting 9 U.S.C. § 10(a) and *Stolt-Nielsen SA v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 669 (2010)); ECF No. 20 at PageID#: 759-60.



## II. Standard of Review

The Federal Arbitration Act expresses a "federal policy favoring arbitration." *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003) (quoting *Volt Info. Scis., Inc.*

---

[2] As indicated above, the Hales ask the Court to vacate only Counts I and II of the arbitration award, both of which allege breach of contract. ECF No. 20 at PageID#: 757.

5

(4:18CV2217)

*v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)). "When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 305 (6th Cir. 2008) (citation omitted). "Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006) (citation and emphasis omitted). "[A]n arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 589 U.S. 564, 569 (2013) (citation omitted).

Pursuant to the Federal Arbitration Act and pertinent case law, a court may vacate an arbitration award only in the following situations:

> (1) where the award was procured by fraud, (2) where the arbitrators were evidently partial or corrupt, (3) where the arbitrators misbehaved so that a party's rights were prejudiced, or (4) where the arbitrators exceeded their powers or executed them so that a final, definite award was not made. In addition, a reviewing court may vacate an award where the arbitrators have manifestly disregarded the law.

*Elec. Data Sys. Corp. v. Donelson*, 473 F.3d 684, 688 (6th Cir. 2007) (citation omitted); *see* 9 U.S.C. § 10(a).

A court must confirm an arbitration award unless it vacates, modifies, or corrects the award as prescribed in the FAA. *Hall St. Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). This limited review is meant to avoid "full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming

(4:18CV2217)

judicial review process.'" *Id.* at 588 (quoting *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 998 (9th Cir. 2003)).

### III. Law and Analysis

The Hales advance two arguments in support of *vacatur*. First, they state that the Arbitration Panel "exceeded its powers, or so imperfectly executed them that a . . . final . . . award upon the subject matter submitted was not made." ECF No. 20 at PageID#: 768-72 (citing 9 U.S.C. § 10(a)(4)). Second, they argue that the Arbitration Panel "manifestly disregarded the law" when it construed the Lease contracts in favor of the Chesapeake Parties. *Id.* at PageID#: 768, 772 (citing *Elec. Data Sys. Corp.*, 473 F.3d at 688)).

#### A. Failure to Decide the Central Issue

"The most fundamental problem with the [arbitration] award," according to the Hales, "is that the arbitrators failed to address the central issue of the case – whether [Chesapeake Exploration] 'markets' the oil and gas to [Chesapeake Marketing]. If not, the royalties must be paid on the price paid by the third-party buyers," not on the price paid to Chesapeake Exploration by Chesapeake Marketing. ECF No. 20 at PageID#: 768. Instead, the Hales insist, the Arbitration Panel concluded only that "[Chesapeake Exploration] markets the oil and gas produced from the Hale Leases." ECF No. 20 at PageID#: 772 (citing ECF No. 9-7 at PageID#: 187). The Panel's decision, they say, did not answer the question presented by the parties because it failed to draw a distinction between marketing (broadly) and marketing *to Chesapeake Marketing* (narrowly). *See id.* The parties submitted to the Panel the discrete question

7

(4:18CV2217)

"[w]hether Chesapeake Exploration 'marketed' oil, gas and [natural gas liquids] to [Chesapeake Marketing]." ECF No. 19-3 at PageID#: 352.

The Court need not determine whether or not the failure to draw such a distinction would justify *vacatur*, though it observes that "an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans*, 589 U.S. at 569 (citation omitted). The Hales' assertion that the Arbitration Panel ignored the central question is belied by the record. The Panel found,

> a. Chesapeake Exploration . . . transfers title and receives consideration from [Chesapeake Marketing] for the oil and gas produced from the . . . Hale Leases.
>
> b. [Chesapeake Exploration] markets the oil and gas produced from the Hale Leases.
>
> c. [Chesapeake Exploration] sells to Chesapeake Marketing at the wellhead the oil and gas produced from the Hale Leases.
>
> d. [Chesapeake Exploration] and its affiliates make legally sufficient accounting entries on their books and records to evidence transfer of title and consideration paid for the oil and gas produced from the Hale Leases.

ECF No. 9-7 at PageID#: 187. The Panel continued,

> a. The Hale Leases provide that [Chesapeake Exploration] may sell to an affiliate.
>
> * * *
>
> f. Claimants provided no evidence that [Chesapeake Marketing], an affiliate of [Chesapeake Exploration], paid a price to [Chesapeake Exploration] that was 'less than that which would be received from a sale to an unaffiliated third party in an arms length transaction considering the volume available, quality, location and length of term of the proposed sale.'

*Id.* (quoting the Leases).

8

(4:18CV2217)

The Panel concluded that the transaction between Chesapeake Exploration and Chesapeake Marketing was genuine, that it occurred on terms that were fair to the Hales and contemplated in the Hales' lease contracts, and that it was the result of Chesapeake Exploration's "marketing" efforts.  The Hales are incorrect to suggest that the Arbitration Panel "failed to address the dispositive motion submitted to it," *see* ECF No. 20 at PageID#: 772, even if the Hales would have used different language or arrived at a different result.  Put simply, when asked whether Chesapeake Exploration "marketed" oil and gas to Chesapeake Marketing, the Panel answered, "Yes."  ECF No. 9-7 at PageID#: 187.

Despite the Hales' thoughtful arguments suggesting that the exchange between Chesapeake Exploration and Chesapeake Marketing is not a genuine transaction and not the result of any  "marketing," those issues are not before the Court.  They have already been argued before the Arbitration Panel and rejected.  Review of an arbitration award is not a *de novo* review, and the Court does not construe the parties' contracts in the first instance.  The Court expresses no opinion about whether the Arbitration Panel was correct on the law or the facts, but it finds that the Panel stayed well within its powers to adjudicate the dispute and executed those powers appropriately.

### B.  Manifest Disregard of the Law

The Hales also argue that the arbitration award should be vacated because the Panel "manifestly disregarded the law" in arriving at its decision.  ECF No. 20 at PageID#: 772.  The arrangement between Chesapeake Exploration and Chesapeake Marketing (the "Development Agreement") transfers the "marketing obligations for royalty owners" from the former to the

9

(4:18CV2217)

latter. *Id.* at PageID#: 762, 772. Given that contractual provision, the Hales argue, it was impossible as a matter of law for the Panel to conclude that Chesapeake Exploration itself performs any "marketing" activities.

The Hales' argument sounds in contract interpretation. They suggest an inconsistency internal to the Hale Leases (in which Chesapeake Exploration was responsible for marketing but was expressly permitted to sell to an affiliate) and between the Hale Leases and the Development Agreement (in which Chesapeake Exploration transferred all marketing obligations to Chesapeake Marketing). The Hales identified this purported inconsistency for the Panel, ECF No. 19-5 at PageID#: 371-75, and the Chesapeake Parties rejoined that "'selling' is synonymous with 'marketing.'" ECF No. 19-8 at PageID#: 698-701. Therefore, the Chesapeake Parties insisted, Chesapeake Exploration satisfies its marketing obligations when it sold the product to Chesapeake Marketing. *Id.* The Panel "carefully read and considered" both positions, ECF No. 19-9 at PageID#: 749 (Final Arbitration Award) and it decided in favor of the Chesapeake Parties, *id.* at PageID#: 751.

The Panel was asked to interpret contracts that were arguably inconsistent both internally and with one another, and it made an informed, careful judgment about how to do so. The Court expresses no opinion about whether the Panel reached the right result in the first instance. Even serious legal error by the Panel would not justify *vacatur* of its decision. *Oxford Health Plans LLC v. Sutter*, 589 U.S. at 569; *Solvay Pharm.*, 442 F.3d at 476.

**IV. Conclusion**

(4:18CV2217)

For the reasons stated, the Chesapeake Parties' motion for summary judgment (ECF No. 9) is granted, the Hales' motion for summary judgment (ECF No. 19) is denied, and the arbitration award is confirmed in its entirety. A separate judgment entry shall issue.

IT IS SO ORDERED.

April 25, 2019 /s/ Benita Y. Pearson
Date Benita Y. Pearson
United States District Judge